## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIRGIN ORBIT, LLC (AS SUCCESSOR TO VIRGIN GALACTIC, LLC)<br><br>     *Plaintiff*,<br><br>v.<br><br>ONEWEB, LTD.<br><br>     *Defendant*. | Case No.<br><br>**VIRGIN ORBIT LLC'S COMPLAINT FOR BREACH OF CONTRACT** |

## COMPLAINT

Plaintiff Virgin Orbit, LLC (as successor to Virgin Galactic, LLC) (individually and collectively, "Virgin") for its complaint against Defendant OneWeb, Ltd. ("OneWeb"), alleges as follows:

## NATURE OF THE ACTION

1.      On May 20, 2015, Virgin entered into a contract with OneWeb whereby Virgin agreed to use its rocket systems to launch 39 separate satellites for OneWeb.   The 39 launches were divided into two distinct and separately timed sets of launches: The first four "Initial Firm Launches" and the following 35 "Remaining Firm Launches."   The contract provided for 100 additional optional launches.   At the agreed upon rate of $6 million per launch, Virgin was to earn between $234 million and $834 million from OneWeb.

2.      Given the magnitude and complexity of the work required to launch 39 separate satellites, the contract provided that if OneWeb terminated without cause (i.e., "for [OneWeb's] convenience"), OneWeb would owe Virgin a significant, one-time termination fee.   Through amendments to the contract, Virgin and OneWeb agreed that the termination fee would be $70 million if OneWeb terminated before June 15, 2018.

3.      As part of the contract, the parties explicitly agreed that (1) the termination fee would be *in addition to* (not in lieu of) any other amounts OneWeb owed under the contract, (2)

the termination fee would be reduced only by payments OneWeb previously made *toward launches that had been terminated* (i.e., launches that had *not* been terminated could *not* be credited to the termination fee), and (3) the termination fee was due *within 45 days* of Virgin's invoice for the fee.

4.      On June 14, 2018, OneWeb terminated the 35 "Remaining Firm Launches" without cause (but not the four "Initial Firm Launches"), thereby triggering the termination fee of $70 million.   OneWeb does not dispute this.   Accounting for other amounts outstanding and contractually mandated late fees, and crediting OneWeb's prior payments toward the "Remaining Firm Launches," OneWeb owes Virgin a termination fee of $46,323,851.

5.      Based on Virgin's invoice dated June 15, 2018, OneWeb's deadline to pay the termination fee was July 30, 2018.   Notwithstanding the unambiguous, agreed upon contractual language, OneWeb continues to refuse to pay the fee.

## THE PARTIES

6.      Virgin designs, engineers, and manufactures its proprietary "LauncherOne" rocket system, and uses its rockets to operate a premier, yet affordable, satellite launch service. Virgin's LauncherOne rocket system combines proven technology with state-of-the-art manufacturing techniques to propel human curiosity into space.   Satellites launched by Virgin aid in earth observation, climate monitoring, telecommunications services, the internet, and maritime asset tracking, among other things.   Virgin is a Delaware limited liability company having its place of business at 4022 E. Conant St., Long Beach, California 90808.

7.      OneWeb is a company registered in St. Helier, Jersey in the British Channel Islands, having its place of business at 13 Castle Street, St. Helier, Jersey JE4 5UT, Channel Islands.   Virgin understands that OneWeb aims to launch hundreds if not thousands of small satellites to provide broadband internet services.

## JURISDICTION AND VENUE

8.      The United States District Court for the Southern District of New York has original subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because "the matter in

controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of a State and citizens or subjects of a foreign state."

9.      The United States District Court for the Southern District of New York has personal jurisdiction over OneWeb, and Venue is proper in the Southern District of New York, because OneWeb consented to jurisdiction and venue through its contractual agreement with Virgin.

## FACTUAL BACKGROUND

### The Parties Entered Into a Satellite "Launch Services Agreement"

10.      On May 20, 2015, Virgin and OneWeb (collectively, "the Parties") entered into a "Launch Services Agreement" ("Agreement") whereby OneWeb "desire[d] to procure and Virgin Galactic desire[d] to provide firm Launch Services for thirty-nine (39) small satellites, and optional Launch Services for up to one hundred (100) small satellites . . . ."

11.      At the time, Virgin was "developing a launch system capable of launching small satellites into low earth orbits" and OneWeb was "plan[ning] to build, deploy and operate an initial constellation of approximately 650 small satellites in low earth orbits . . . ."

12.      The Agreement divided the 39 contemplated launches into two distinct sets.   The first four launches were referred to as the *"Initial Firm Launches"* **("IFL")**, and the latter 35 launches were referred to as the *"Remaining Firm Launches"* **("RFL")**.   The Agreement further distinguished the IFL and RFL by providing unique definitions, payment schedules, and launch periods for each.   Specifically, the IFL were to start between July 1, 2017 and December 31, 2017, while the RFL were to start between April 1, 2018 and September 30, 2018.

13.      Under the Agreement, OneWeb would pay Virgin $6 million for each launch, not including potential price escalations.   Given the contractual guarantee of 39 launches (with the possibility of a further 100 launches), ***Virgin stood to earn between $234 million and $834 million under its Agreement with OneWeb.***

14.      By its terms, the Agreement could be amended "only in writing, signed by duly authorized representatives of both Parties."

**OneWeb Agreed to Pay a Significant Fee if it Terminated the Agreement Without Cause**

15.     Section 9.4 of the Agreement allowed OneWeb to "terminate one or more (including all) Launch Services for any reason at any time prior to take-off of the Carrier Aircraft upon written notification to Virgin Galactic."   OneWeb's no-cause termination right was deemed "Termination of Individual Launch Service(s) by [OneWeb] for its Convenience."

16.     If OneWeb exercised this right to terminate "for its convenience," then ***Virgin would be "entitled to a Termination Fee for each terminated Launch Service* . . . ."**   Under the original Agreement (i.e., before amendment), the Termination Fee was calculated as a percentage of the total contract amount, where the percentage was based on the proximity to the launch dates.   As launch dates approached, the percentages escalated.

17.     For example, for IFL, if OneWeb terminated the Agreement at any point more than one year before the first day of the Launch Term, then OneWeb would owe Virgin 37.5% of the total IFL costs, or $9,000,000.[1]   As the Agreement made clear, the Termination Fee for RFL was separate and was calculated according to different percentages.   There, if OneWeb terminated the Agreement within 364 days of signing the Agreement, then OneWeb would owe Virgin 17.5% of the total RFL costs, or $36,750,000.[2]   For both IFL and RFL, if OneWeb terminated the Agreement within the Launch Term or Launch Period, then OneWeb would owe Virgin 100% of the total IFL and RFL costs, or $234,000,000.[3]

18.     However, during the spring of 2017, OneWeb was seeking to revise the terms of the Agreement to reduce the number and possibly the cost of the launches and spread out the launch dates for several years beyond the original terms.   At that time, the Termination Fee was scheduled to increase through 2017 and early 2018 to more than $100 million, upon the occurrence of milestone dates prior to the then-scheduled launch dates.   OneWeb stated that its lenders would force it to terminate the Agreement rather than become obligated to pay the

---

[1]     $6,000,000 (cost per IFL) x 4 (number of IFLs) x 37.5% = $9,000,000.
[2]     $6,000,000 (cost per RFL) x 35 (number of IFLs) x 17.5% = $36,750,000.
[3]     $6,000,000 (cost per launch) x 39 (number of launches) = $234,000,000.

increased Termination Fee—even though the fee would obviously never be incurred if OneWeb did not terminate the Agreement.   Nonetheless, OneWeb requested, and Virgin agreed, to amend Section 9.4 of the Agreement, first to slow the contractual rate of increase in the Termination Fee and later to fix the Termination Fee to a flat $70 million.   This agreement was intended to give the Parties time to complete their negotiations on the contract terms.   The modified Termination Fee would apply only until June 15, 2018.

19.     The Parties agreed that the Termination Fees "represent the Parties' current, reasonable and good faith estimates of damages to be incurred as a result of delay or termination and do not serve as a penalty."

**The Agreement's Termination Fee Was Exclusive of Other Amounts OneWeb Owed**

20.     Section 9.2.3 of the Agreement expressly states that "[t]he Termination Fee ***is in addition to any other amounts owed under this Agreement by [OneWeb] to Virgin Galactic at the time of termination*** . . . ."   For example, if at the time of termination OneWeb owed Virgin $10 million and the Termination Fee was $70 million, then OneWeb would owe Virgin a total of $80 million.

**The Termination Fee Could Be Reduced Only By Amounts Paid For *Terminated* Launches**

21.     Pursuant to Section 9.2.4 of the Agreement, in the event of termination by OneWeb "for its convenience," OneWeb's total termination liability would be calculated as "the difference between the Termination Fee (plus other amounts owed) ***and the payments made toward the Price of the terminated Launch Service*** . . . ."   For example, if OneWeb terminated all of the RFL (but did not terminate the IFL), had paid $30 million toward the RFL and $20 million toward the IFL, then OneWeb's Termination Fee would be reduced by $30 million (i.e., not $50 million) because, in this example, the IFL was not a ***"terminated Launch Service."***

22.     In the event of termination, OneWeb would be required to pay the Termination Fee ***"within forty-five (45) days of Virgin Galactic's invoice"*** for that fee.

**A July 14, 2017 Side Letter Fixed/Reduced the Amount of the Termination Fee**

23.     On July 14, 2017, the Parties entered into a Side Letter ("7/14/17 Side Letter") that expressly amended Section 9.4 of the Agreement (i.e., termination by OneWeb "for its convenience").   In particular, the Parties "agree[d] to amend the Termination Fee" fixing it to $67.5 million as of July 14, 2017, with increases up to $87.5 million by June 30, 2018, depending on when (if at all) OneWeb terminated.

24.     Prior to this amendment, the Termination Fee would have increased from $67.5 million in June 2017 to $74.1 million in January 2018 and $108 million in June 2018.   Virgin accepted the risk that OneWeb might terminate some or all of the launches under this more favorable arrangement.   It agreed to the change in order to give enough time for negotiations, hoping to strike a new deal with OneWeb that would preserve as much of the original Agreement as possible.

25.     However, while the original Section 9.4 of the Agreement provided a Termination Fee "for *each* terminated Launch Service," under the 7/14/17 Side Letter amendment, Virgin would be entitled to the entire Termination Fee "if OneWeb terminates *part or all* of the Agreement for its convenience . . . ."   For example, under the Side Letter, OneWeb would be liable for the entire Termination Fee whether it terminated 10 launches, 20 launches, or any other number of launches.   Virgin viewed this provision as a hedge against the risk that OneWeb might terminate some of the launches early under the new terms.

**The July 14, 2017 Side Letter Did Not Amend Sections 9.2.3 or 9.2.4 of the Agreement**

26.     While the Parties amended the *amount* of the Termination Fee, they expressly did not amend (1) how that fee was to be calculated, (2) what amounts could be credited against that fee, or (3) when that fee was to be paid.

27.     Specifically, the Parties expressly did not amend Section 9.2.3 of the Agreement, which states that "[t]he Termination Fee *is in addition to any other amounts owed under this Agreement by [OneWeb] to Virgin Galactic at the time of termination . . . ."*   And the Parties expressly did not amend Section 9.2.4 of the Agreement, which states that OneWeb's

termination liability shall be calculated as "the difference between the Termination Fee (plus other amounts owed) *and the payments made toward the Price of the terminated Launch Service . . . ."*   Section 9.2.4 further stated that the Termination Fee would be due *"within forty-five (45) days* of Virgin Galactic's invoice."

28.     Consistent with Sections 9.2.3 and 9.2.4 of the Agreement, the 7/14/17 Side Letter stated that "[t]he Amended Termination Fee will be reduced by payments previously made by OneWeb *under the terms of the Agreement as amended"*—that is, pursuant to Section 9.2.4, only "payments made *toward the Price of the terminated Launch Service"* could be credited against the Termination Fee; payments made for *launches not terminated* could not be credited against the Termination Fee.

29.     The 7/14/17 Side Letter did not modify, amend, or reference Sections 9.2.3 or 9.2.4 of the Agreement.   Indeed, the Side Letter notes that, *"[e]xcept as expressly provided herein, there are no further amendments to th[e] Agreement and the Parties agree that the Agreement remains in full force and effect."*   Consequently, Sections 9.2.3 and 9.2.4 remain entirely unchanged from the original Agreement.

**Additional Side Letters Further Limited the Increases of the Termination Fee**

30.     Within a few months after the 7/14/17 Side Letter and on several occasions thereafter, OneWeb requested further accommodations to slow the increase in the newly-agreed Amended Termination Fee, again stating that its lenders did not wish it to incur the increased obligation.   Each time Virgin acquiesced and the Parties signed new letters limiting and eventually stopping the increase in the Amended Termination Fee.

31.     On December 8, 2017, in order to prevent the Amended Termination Fee from increasing to $73 million on January 1, 2018, OneWeb requested and Virgin agreed to a Side Letter that delayed the increase until February 28, 2018.   On February 28, 2018, again to prevent the Amended Termination Fee from increasing to $73 million, OneWeb requested and Virgin agreed to a Side Letter that delayed the increase until March 15, 2018.   Two weeks later, on March 14, 2018, OneWeb requested and Virgin agreed to a further Side Letter that delayed

the increase of the Amended Termination Fee until March 23, 2018. The following week, on

March 20, 2018, OneWeb again requested and Virgin agreed to a Side Letter that delayed the

increase of the Amended Termination Fee until April 30, 2018.   Finally, on April 27, 2018,

OneWeb requested and Virgin agreed to yet another Side Letter that further modified the amount

of OneWeb's Termination Fee ("4/27/18 Side Letter").   Specifically, the 4/27/18 Side Letter

stated that "the Amended Termination Fee shall not increase from $70,000,000 until June 15,

2018."  (Under the 7/14/17 Side Letter, the Termination Fee would have been $87.5 million by

June 30, 2018.)

32.     Like the 7/14/17 Side Letter, the subsequent Side Letters did not modify, amend,

or reference Sections 9.2.3 or 9.2.4 of the Agreement, the provisions that set out (1) how

OneWeb's Termination Fee was to be calculated, (2) what amounts could be credited against that

fee, and (3) when that fee was to be paid.   Consequently, Sections 9.2.3 and 9.2.4 remain

entirely unchanged from the original Agreement.

### OneWeb Terminated the RFL But Did Not Terminate the IFL

33.     Between July 14, 2017 and June 14, 2018, the Parties engaged in ongoing

negotiations in which OneWeb sought to (1) reduce the number and cost of launches, (2) delay

when the first set of RFLs would occur, and (3) spread out the timing of the RFLs for several

years beyond the original contract term.   Virgin prepared and offered numerous proposals and

responded to many counteroffers from OneWeb.   As of June 2018, the Parties appeared to be

close to a new negotiated deal, and Virgin sent OneWeb a written proposal on June 7, 2018.

Yet on June 14, 2018, one day before the expiration of the 4/27/18 Side Letter (and the end of

the tolling of the increases in the Termination Fee), OneWeb formally terminated the Agreement

in part pursuant to Section 9.4.   OneWeb conceded that its termination was *"for [the]*

*Convenience of OneWeb,"* thereby triggering the Termination Fee.   Specifically, of the 39 total

launches contemplated by the Agreement, OneWeb terminated the 35 "Remaining Firm

Launches" ("RFL") *but expressly did not terminate the first four "Initial Firm Launches"*

*("IFL").*

34.     Pursuant to the 4/27/18 Side Letter, **the agreed-upon Termination Fee OneWeb is required to pay Virgin is $70 million.**

35.     Consistent with the 4/27/18 Side Letter and OneWeb's termination of the RFL "for its convenience," on June 15, 2018, Virgin sent OneWeb an invoice indicating that OneWeb owed Virgin "the Amended Termination Fee of $70M *(minus the payments made to date with respect to the Remaining Firm Launches)* plus interest on past due amounts . . . ."   That is, per Section 9.2.4 of the Agreement, Virgin noted that OneWeb could credit its prior payments *related to the terminated RFL* to the Termination Fee.   Given that OneWeb did not terminate the IFL, **it could not credit its prior IFL payments to the Termination Fee**.   Section 9.2.4 expressly states that OneWeb "shall be liable for and shall pay the difference between the Termination Fee (plus other amounts owed) **and the payments made toward the Price of the terminated Launch Service**" (i.e., the RFL payments, not the IFL payments).

36.     Pursuant to Section 9.2.4, OneWeb's deadline to pay the Termination Fee was July 30, 2018 (i.e., *"within forty-five (45) days of Virgin Galactic's invoice"*).   OneWeb did not pay the Termination Fee by the contractual deadline and indeed has not paid it in full since.

## OneWeb Owes Virgin $46,323,851 as a Result of its Termination for Convenience

37.     At the time of OneWeb's termination of the Agreement, OneWeb had $19,000,000 past due to Virgin and an associated late payment fee of $2,130,719.   At the same time, OneWeb had paid a total of $26,250,000 toward the RFL (out of the total $210,000,000 contemplated by the Agreement for the RFL).   Roughly six weeks after terminating the Agreement, OneWeb paid Virgin $22,365,377 for bills outstanding.

38.     As a result, OneWeb's total termination liability as of May 1, 2019 is calculated as follows:

|  |  |
|---|---|
| + **$70,000,000** | (Agreed upon Termination Fee from 4/27/18 Side Letter) |
| + **$19,000,000** | (Past due amount owed at the time of termination)[4] |

---

[4]     Section 9.2.3 of the Agreement (which was not amended by the Side Letters) states that "[t]he Termination Fee *is in addition to any other amounts owed under this Agreement by*

| | | |
|---|---|---|
| + $   291,507 | (Interest on $19M past due amount) | |
| + $ 2,402,101 | ("Negotiated Interest Payment" owed under Side Letters) | |
| + $ 3,245,620 | (Late payment fees)[5] | |
| - $26,250,000 | (Previous RFL payments made by OneWeb)[6] | |
| - $22,365,377 | (July 27, 2018 payment by OneWeb) | |
| = $46,323,851 | **(OneWeb's Total Termination Liability)** | |

39.     OneWeb's termination liability of $46,323,851 as of May 1, 2019, is substantially lower than the $234 million to $834 million Virgin stood to gain under the Agreement had OneWeb followed through with its contractual obligations.

40.     In addition, since this dispute has not been resolved, Section 5.3.3 of the Agreement provides that Virgin has no obligation to perform its non-disputed obligations under the Agreement (including, without limitation, conducting any IFL launches), and Virgin reserves its ability to exercise this right under the Agreement.

41.     Starting in late August 2018, the parties engaged in the informal dispute resolution process required by Article 22 of the Agreement.   Throughout that process, OneWeb continued to refuse to pay Virgin the agreed upon Termination Fee.   As a result, the Agreement allows Virgin to bring suit against OneWeb.

---

*[OneWeb] to Virgin Galactic at the time of termination . . . ."*  Further, Section 9.2.4 of the Agreement (which likewise was not amended by the Side Letters) states that OneWeb's termination liability includes *"the Termination Fee (plus other amounts owed) . . . ."*

[5]   The Agreement provides that "[i]f payment has not been received by Virgin Galactic by the due date, [OneWeb] shall pay Virgin Galactic late fees on any unpaid amount in the amount of 10% per annum."   OneWeb's late payment fee is calculated as of May 1, 2019, and continues to accrue each day thereafter.

[6]   Section 9.2.4 of the Agreement (which was not amended by the Side Letters) states that "payments made toward the Price of the ***terminated Launch Service"*** (i.e., OneWeb's RFL payments) can be credited toward OneWeb's termination liability.   The Agreement ***does not*** state that payments made toward ***launches not terminated*** (i.e., OneWeb's IFL payments) can be credited toward OneWeb's termination liability.

**OneWeb Misreads the Agreement and Consequently Miscalculates its Termination Fee**

42.     After terminating the RFL portion of the Agreement, OneWeb asserted that it had no termination liability to Virgin whatsoever.   As required by the Agreement, the Parties attempted to resolve their dispute without formal litigation.   Through that process, OneWeb expressed why it believes it is not liable to Virgin.

43.     *First*, in a letter dated August 13, 2018 (the "August OneWeb Letter"), OneWeb maintained that its IFL payment of $18 million and contemplated IFL payment of $6 million should be credited to the Termination Fee.   Virgin informed OneWeb that its position is not supported by Section 9.2.4 of the Agreement, which unambiguously states that only OneWeb's "payments made ***toward the Price of the terminated Launch Service***" can be credited against the Termination Fee.   That is, OneWeb's previous payments ***to the RFL* "terminated launch service"** can be credited toward the Termination Fee, but OneWeb's previous (and future) payments ***to the IFL (which is not a "terminated launch service")*** cannot.

44.     This clear contractual interpretation appears to have been OneWeb's own understanding of the Agreement and 7/14/17 Side Letter.   Specifically, on September 5, 2017 (i.e., nine months before termination), OneWeb's Director of Launch Systems and Operations, Mr. Andreas Doulaveris, emailed Virgin's Chief Administrative Officer and General Counsel to "clarify the breakdown of the payments and termination fees" from the 7/14/17 "Side Letter to [the] Agreement."   In doing so, OneWeb explicitly acknowledged its "understanding" that in calculating the Termination Fee ***"the intent was to maintain the separation between the IFL and RFL as it gets very complicated otherwise."***   Mr. Doulaveris further noted that OneWeb wanted to "determine which payments made apply to . . . the termination fee" and that it was "important as [OneWeb] wants to be able to [allocate payments] ***as the original contract was written***."   OneWeb now takes the diametrically opposite position after terminating the Agreement.

45.     *Second*, in the August OneWeb Letter, OneWeb again changed its position to argue that its late payment of $22,365,377 should satisfy ***both*** OneWeb's past due bills ***and***

reduce OneWeb's Termination Fee by the same amount.   Notably, two weeks earlier, when it sent its wire transfer, OneWeb *expressly* stated that the payment applied only with respect to *the invoice for the past due bill* and did not mention, or seek to apply the payment to, the invoice for the Termination Fee.   Virgin informed OneWeb that its effort to double count this $22,365,377 is not supported by the Agreement.   Specifically, Section 9.2.3 expressly states that "[t]he Termination Fee *is in addition to any other amounts owed under this Agreement by [OneWeb] to Virgin Galactic at the time of termination . . . ."*   Given that OneWeb owed over $22,365,377 at the time of termination, its payment of that amount can be applied to *either* amounts past due *or* the Termination Fee—not both.

46.     *Third*, also in the August OneWeb Letter, OneWeb maintained that any payments it makes now or in the future (including the $6 million IFL payment) can be applied to reduce the $70 million Termination Fee because the 7/14/17 Side Letter does not provide a deadline to pay the Termination Fee and permits OneWeb to reduce the fee "by payments previously made . . . ." With regard to the $6 million payment (which is still unpaid as of this date), OneWeb further justified its position by stating that it "had always intended to pay such amount ahead of any Termination Fee calculation date."   OneWeb apparently believes that the Termination Fee has not yet come due (even as of this date, almost one year after the termination) and it will never come due, so all payments OneWeb makes may be credited against the Termination Fee.   Virgin informed OneWeb that its position is contrary to the Agreement for at least two reasons: (1) Section 9.2.4 of the Agreement clearly states that OneWeb must pay the Termination Fee *"within forty-five (45) days of Virgin Galactic's invoice"* (i.e., by July 30, 2018), thereby precluding OneWeb from continuing to delay payment indefinitely.   The 7/14/17 Side Letter expressly did not amend or modify Section 9.2.4 of the Agreement.   (2) As also provided by Section 9.2.4, only *RFL payments* can reduce a Termination Fee associated with the termination *of the RFLs*; that is, OneWeb's future *IFL payments* are irrelevant to the Termination Fee.

## FIRST CAUSE OF ACTION

### Breach of Contract

47.     Virgin repeats and re-alleges all of the allegations of all the preceding paragraphs as if fully set forth herein.

48.     The Parties properly entered into the Agreement, 7/14/17 Side Letter, and 4/27/18 Side Letter.   The Agreement and Side Letters are binding contracts.

49.     On June 14, 2018, OneWeb terminated all of the RFL launches under the Agreement "for its convenience."   By that date, Virgin had performed all of its obligations under the Agreement, 7/14/17 Side Letter, and 4/27/18 Side Letter that had come due.

50.     As a result of OneWeb's termination of the RFL launches (but not the IFL launches), the Agreement and Side Letters require that (1) "Virgin Galactic *shall be entitled to a Termination Fee* for each terminated Launch Service," (2) "[t]he Termination Fee *is in addition to any other amounts owed under this Agreement* by [OneWeb] to Virgin Galactic at the time of termination," (3) OneWeb's Termination Fee be reduced only by "payments made toward the Price of *the terminated Launch Service*," and (4) the Termination Fee be due *"within forty-five (45) days of Virgin Galactic's invoice"* for that fee.   OneWeb breached the Agreement and Side Letters by failing and refusing to pay Virgin the agreed upon Termination Fee.

51.     The Parties agreed that the Termination Fee "represent[ed] the Parties' current, reasonable and good faith estimates of damages to be incurred as a result of delay or termination and [did] not serve as a penalty."

52.     Virgin has suffered damages of at least $46,323,851 as of May 1, 2019, as a direct result of OneWeb's breach of the Agreement and Side Letters.   Virgin's damages of $46,323,851 are exclusive of past due interest OneWeb owes to Virgin since May 1, 2019, which is accruing daily.

## PRAYER

WHEREFORE, Virgin prays for judgment as follows:

1.     That judgment be awarded in favor of Virgin and against OneWeb;

2.      That Virgin be awarded damages in the amount of $46,323,851 plus past due

        interest since May 1, 2019 to be calculated at the time of Judgment;

3.      That Virgin recover its attorneys' fees and costs incurred herein as permitted by

        law; and

4.      That Virgin be granted such other and further relief as the Court deems just and

        proper.


DATED: June 4, 2019

                                    By_____
                                         Marc L. Greenwald
                                         QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                         51 Madison Avenue, 22nd Floor
                                         New York, New York 10010
                                         Telephone:     (212) 849-7140
                                         Facsimile:     (212) 849-7100
                                         marcgreenwald@quinnemanuel.com

                                         Claude M. Stern *(pro hac vice to be filed)*
                                         Kyle K. Batter *(pro hac vice to be filed)*
                                         QUINN EMANUEL URQUHART & SULLIVAN, LLP
                                         555 Twin Dolphin Drive, 5th Floor
                                         Redwood Shores, California 94065
                                         Telephone:     (650) 801-5000
                                         Facsimile:     (650) 801-5100
                                         claudestern@quinnemanuel.com
                                         kylebatter@quinnemanuel.com

                                         *Attorneys for Plaintiff Virgin Orbit, LLC*